Filed 8/4/26  In re V.M. CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

| | |
|---|---|
| In re V.M., a Person Coming Under the Juvenile Court Law. | C104648 |
| | (Super. Ct. No. JDSQ2500041) |
| THE PEOPLE,<br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>V.M.,<br>　　Defendant and Appellant. | |

Following the minor V.M.'s admission to assault with a deadly weapon and a great bodily injury enhancement, the juvenile court committed him to a secure youth treatment facility (SYTF).  On appeal, V.M. contends the juvenile court abused its discretion because substantial evidence does not support its determination that a less restrictive placement was unsuitable.  We affirm.

BACKGROUND

I

*Factual Basis*

The parties stipulated to the People's recitation of the police report as the factual basis:  "On the 20th of July, 2024, at around 7:00 in the evening, this minor, [V.M.], confronted a group of three young men for an unknown reason.  During this quarrel,

1

threats were exchanged, and at some point during the quarrel [V.M.] pulled out a knife and threatened the group with it. [¶] This set in motion a chain of events, which ultimately resulted in the victim being stabbed in the chest. That stabbing resulted in that victim ultimately perishing within an hour or two after the stabbing. [¶] The basis of the [assault] is [V.M.] confronting those three young men with that knife and the great bodily injury is the result of the series of events started by [V.M.], ultimately resulting in the loss of the victim's life."

## II

### *The Charges*

The People filed a juvenile wardship petition charging V.M. with willful, deliberate, and premeditated murder (Pen. Code, § 187, subd. (a)) and alleged the murder was committed by lying in wait (Pen. Code, § 190.2, subd. (a)(15)). Following a detention hearing, the juvenile court ordered V.M. detained.

After a contested transfer hearing, the juvenile court retained jurisdiction.

The People amended the petition to add count 2, assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), and a great bodily injury enhancement (Pen. Code, § 12022.7). V.M. admitted the assault with a deadly weapon charge and great bodily injury enhancement.[1]

The matter was transferred from Sutter County to Yuba County, and a disposition hearing was scheduled.

---

[1] It appears the remaining count and enhancement were dismissed, though the record does not explicitly reflect as such.

2

### III

### *Disposition Hearing*

A.     *Probation Reports*

The probation department recommended V.M. be committed to the Tri County Youth Development Center in the SYTF for the baseline term of three years.  The probation report explained that V.M. had been accepted into the Maxine Singer Youth Guidance Center program (MSYGC) and that an assessment determined the SYTF would be able to provide services to meet V.M.'s needs.  It noted that V.M. "has an opportunity to lessen his term by displaying good behavior and transitioning to a lesser restrictive environment" and "has already been determined as an appropriate candidate for the MSYGC program which can be used as a lesser restrictive option in the future."

The report included V.M.'s statement in which he said he acted in self-defense and the district attorney was "[l]ucky" that he admitted to assault because he "could have fought it and won."  He expressed remorse and stated it "suck[ed]" that he killed the victim but claimed he "kind of had to" and there was "nothing he can do about it now."  The report also outlined V.M.'s school disciplinary history, including that he "received a referral for stabbing another student in the back with a pencil."

The report assessed V.M. as a moderate risk to reoffend and included an evaluation and case plan.  The evaluation summarized the offense, noting that V.M. had charged the victim and his friends several times while holding a large folding knife.  Surveillance footage of the incident showed that both parties had multiple chances to disengage, and V.M. had four such opportunities.  The report then stated:  "At the same time, [V.M.] has not acknowledged his role in the incident.  Probation has considered the progress [V.M.] has made and the programs in which he has participated.  However, it is difficult to conclude that rehabilitation has been achieved when [V.M.] is not

forthcoming in therapy.[2]  In addition, probation must take into consideration community safety concerns, as there remains a risk of similar behavior recurring should the minor be challenged by another individual given [V.M.'s] lack of acknowledgment of his role in the incident."  It also stated it was "unfortunate that the circumstances which led to the offense are unclear after reviewing witness statements and questioning [V.M.]"  With regard to V.M.'s role in the offense for purposes of determining the appropriateness of an SYTF commitment, the report acknowledged either party could have a colorable claim of self-defense, but V.M. stabbed the victim, killing him, after V.M. "initiat[ed] the interaction with a knife in a threatening manner."  Accordingly, the report recommended commitment to the SYTF.

The report and an amended probation report contained case plans identifying three areas to address V.M.'s delinquent conduct, including criminal thinking, schooling, and adult living.  To address his criminal thinking with the goal of understanding how his behavior impacts others, V.M. would "attend, participate in, and successfully complete What Got Me Here, Victim Awareness, and Responsible Thinking programs."  To address his schooling with the goal of graduating from high school or a vocational program, V.M. would complete all of his assignments and obtain passing grades in all of his classes.  To address his adult living with the goal of developing the necessary skills to live self-sufficiently, V.M. would "attend, participate in, and successfully complete an Independent Living program."

---

**2**  At the disposition hearing, the probation officer stated, "[W]e are aware of the therapy and that [V.M.] is fully engaged in the therapy right now, but the recommendation remains the same."

B.       *The Hearing*

The juvenile court held a dispositional hearing.  The court heard victim impact statements from various family members of the victim, in which they expressed grief and requested the maximum sentence.

V.M.'s counsel then noted that each party had admitted a psychologist report into evidence at the transfer hearing.  In response to the probation report's assertion that V.M. had not acknowledged his role in the offense, counsel argued the People's psychologist did not believe V.M. intended "to kill or even severely injure the victim" but had stabbed the victim as a warning and to protect himself.

The probation officer noted the recommendation was based not only on community safety but also on V.M.'s role after the stabbing.

Counsel sought to admit as exhibit A Dr. Amir Ramezani's neuropsychological evaluation of V.M., prepared for the transfer hearing.  In so doing, counsel directed the court to page 11, which summarized V.M.'s personality and psychopathology inventory. The report indicated that V.M. showed symptoms of various mental health disorders. V.M. reported that "illegal behaviors and stimulus seeking would occur when he was with his peers."  The report suggested that V.M. was "motivated for treatment and acknowledges his problems and the need for help" and had "a positive attitude towards the possibility of personal change, the value of therapy, and the importance of personal responsibility."  Based on this evaluation, V.M.'s lack of record, his family support, and participation in counseling, counsel argued "that there is a less restrictive program that can be instituted with my client out of custody, out of the juvenile hall."  Counsel further noted that with regard to the severity of the offense, V.M. had originally been charged with murder but ultimately pled to assault with a deadly weapon and a great bodily injury enhancement.  Counsel asserted V.M. acted in self-defense, and the video showed him running away from three individuals with "big" rocks.  Counsel asserted commitment to the SYTF was excessive in this case.

5

The People argued in response that self-defense did not apply to this case because V.M. assaulted the victim with a knife and did not withdraw, nor did he call for or seek help or otherwise show fear for his life. The People further noted that while V.M. turned himself in to law enforcement, he did not do so until two days later. The People disagreed that V.M. had shown any remorse based on the totality of his statements to the probation officer. The People submitted on probation's recommendation for commitment to the SYTF for three years based on the seriousness of the charge and enhancement.

V.M.'s counsel had no further argument.

The court explained it had considered page 11 of Dr. Ramezani's report, the probation report and attachments, and the parties' arguments. The court adjudged V.M. a ward of the court and ordered him committed to the SYTF, finding "a less restrictive alternative disposition [wa]s unsuitable." In so finding, the trial court explained it had "considered a number of factors, including the severity of the offense, including the youth's role in the offense, the youth's behavior, the harm done to the victims, the youth's previous delinquent history, including the adequacy and success of previous attempts by the juvenile court to rehabilitate the youth; whether the programming, treatment, education offered and provided in a secured youth treatment facility is appropriate to meet the treatment and security needs of the youth; whether the goals of rehabilitation and community safety can be met by assigning the youth to an alternative, less-restrictive disposition available to the court; the youth's age, developmental maturity, mental and emotional health." The court further found "return of the youth to the home would be contrary to his welfare" and that "[r]easonable efforts have been made to prevent or eliminate the need for removing the youth from his home or make it possible for the youth to return home." The court then exercised discretion to deem the offense a felony.

Having "considered the individual facts and circumstances of the case," the trial court ordered the maximum term of six years.

6

V.M. timely appealed.

## DISCUSSION

V.M. contends that commitment to the SYTF constituted an abuse of discretion because the record does not contain sufficient evidence that the commitment would benefit him or that less restrictive alternatives would be ineffective or inappropriate. We are not persuaded.

Until recently, the Division of Juvenile Justice (DJJ) was "the state's most restrictive placement for its most severe juvenile offenders." (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 902.) DJJ was previously known as the California Youth Authority. (*Id.* at p. 906, fn. 4.) In 2020, the Legislature enacted juvenile justice realignment by passing Senate Bill No. 823 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 337). Implementing the Legislature's juvenile justice realignment program required the eventual closure of DJJ and the transfer of its responsibilities to California counties. (Welf. & Inst. Code, § 736.5, subd. (a).)[3] The county-level equivalent of DJJ is a secure track commitment, also known as an SYTF. (§§ 875, 875.5.)

" ' "We review a juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences to support its decision." [Citation.] " '[D]iscretion is abused whenever the court exceeds the bounds of all reason, all of the circumstances being considered.' " [Citation.] We will not disturb the juvenile court's findings when there is substantial evidence to support them. [Citation.] " 'In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law.' " ' [Citation.] 'A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence.' " (*In re Khalid B.* (2015)

---

[3] Undesignated statutory references are to the Welfare and Institutions Code.

233 Cal.App.4th 1285, 1288.) "The purpose of the juvenile court is to protect both the minor under its jurisdiction and the public, and to preserve and strengthen the minor's family ties whenever possible." (*In re Walter P.* (2009) 170 Cal.App.4th 95, 99; see § 202, subd. (a).) "Central to the juvenile court's mission are the care, treatment, guidance, and rehabilitation of the delinquent juvenile." (*In re Walter P.*, at p. 99; see § 202, subd. (b).)

A juvenile court may order that a minor be committed to an SYTF for a period of confinement if, among other things, the "court has made a finding on the record that a less restrictive, alternative disposition for the ward is unsuitable." (§ 875, subd. (a)(3).) In making such a commitment determination, the juvenile court must consider: "(A) The severity of the offense or offenses for which the ward has been most recently adjudicated, including the ward's role in the offense, the ward's behavior, and harm done to victims. [¶] (B) The ward's previous delinquent history, including the adequacy and success of previous attempts by the juvenile court to rehabilitate the ward. [¶] (C) Whether the programming, treatment, and education offered and provided in a secure youth treatment facility is appropriate to meet the treatment and security needs of the ward. [¶] (D) Whether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court. [¶] (E) The ward's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing the ward to a term of confinement in a secure youth treatment facility." (§ 875, subd. (a)(3)(A)-(E).)

Section 734 states: "No ward of the juvenile court shall be committed to the Youth Authority unless the judge of the court is fully satisfied that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority." Thus, to support an SYTF commitment, "it is required that there

be evidence in the record demonstrating probable benefit to the minor, and evidence supporting a determination that less restrictive alternatives are ineffective or inappropriate." (*In re Teofilio A.* (1989) 210 Cal.App.3d 571, 576.)  But it is not necessary that less restrictive alternatives be attempted before an SYTF commitment is ordered.  (*In re Eddie M.* (2003) 31 Cal.4th 480, 507.)  In this regard, the seriousness of the offense may be considered.  (*In re Abdul Y.* (1982) 130 Cal.App.3d 847, 869.)

I

*Probable Benefit*

Without elaborating, V.M. argues no substantial evidence supports a finding that he would receive a probable benefit from an SYTF commitment.  The record does not support this contention.

The probation report and amended probation report identified three criminogenic needs to address V.M.'s "delinquent conduct in the community," including criminal thinking, schooling, and adult living.  To address his criminal thinking, V.M. would take what got me here, victim awareness, and responsible thinking programs.  To address his schooling, V.M. would complete all of his assignments and obtain passing grades in all of his classes.  To address his adult living, V.M. would take an independent living program. Thus, substantial evidence supports the juvenile court's implicit determination that V.M. would benefit from commitment to the SYTF.  (*In re Carlos J.* (2018) 22 Cal.App.5th 1, 10 [no substantial evidence of probable benefit where record did not contain evidence of programs at secure facility expected to benefit minor].)

## II

### *Least Restrictive Alternative*

V.M. also asserts no substantial evidence supports the juvenile court's "determination that less restrictive alternatives are ineffective or inappropriate," and "the court failed to utilize or even seriously consider an available less restrictive placement—MSYGC." We reject these contentions.

Substantial evidence supported the juvenile court's determination that a less restrictive alternative disposition was unsuitable. The record contains substantial evidence of the severity of V.M.'s offense. (§ 875, subd. (a)(3)(A).) V.M. initiated the offense and stabbed the victim, killing him. The probation report summarized the video surveillance footage of the incident, which showed V.M. approaching a group of individuals while holding a large folding knife and charging several times. In his statement to probation, V.M. expressed remorse and that it "suck[ed]" that the victim died, but also said he "kind of had to" and there was "nothing he can do about it now." He also stated his actions were a "last resort" response. Given V.M.'s failure to acknowledge his role in the offense, the probation report expressed concern for community safety that V.M. might engage in the same actions if "challenged by another individual." Based on V.M.'s actions and his failure to acknowledge his role as the initiator in the offense, and with consideration for community safety, the probation report recommended placement in an SYTF. "A juvenile court may properly consider 'a restrictive commitment as a means of protecting the public safety.' " (*Carlos J.*, *supra*, 22 Cal.App.5th at p. 6.)

V.M. argues his claim of self-defense "mitigate[es] the severity of [his] role and behavior, despite the ultimate harm done to the victim." The record contains V.M.'s statement that he acted in self-defense. However, it also contains evidence that V.M. initiated the confrontation by charging the victim and his friends with a large folding knife, and despite multiple chances to disengage, ultimately stabbed the victim. In

10

essence, V.M. asks us to reweigh the evidence that was before the juvenile court. But that is not our undertaking when reviewing for substantial evidence. Under this standard, "a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts.' [Citation.] The determinations should 'be upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.' " (*In re Caden C.* (2021) 11 Cal.5th 614, 640.)

The record reveals that V.M. did not have a lengthy delinquent history. (§ 875, subd. (a)(3)(B).) V.M. had a previous adjudication for burglary (Pen. Code, § 459) and vandalism (Pen. Code, § 594, subd. (b)(1)), which was subsequently terminated upon successful completion of deferred entry of judgment. V.M. argues his "previous delinquent history was minimal" and his previous adjudication "was dismissed after [he] successfully terminated" deferred entry of judgment, all of which "militates in favor of a less restrictive alternative." But as the People correctly note, this is one of five factors, and SYTF placement can still be appropriate in the absence of a lengthy delinquent history. (*In re Abdul Y.*, *supra*, 130 Cal.App.3d at p. 869 ["Although appellant is a first-time offender, this in itself does not indicate that CYA commitment is inappropriate"].)

As we previously concluded, the record contains substantial evidence to support the court's determination that available "programming, treatment, and education" at the SYTF was appropriate to meet the treatment and security needs of the ward." (§ 875, subd. (a)(3)(C).) V.M. asserts that "[t]he record does not support a finding that a less restrictive program, such as MSYGC, would not be effective for [V.M.]" He asserts "the record is devoid of the programming available through MSYGC" such that it does not show the same or similar programs available at the SYTF would not also be available at MSYGC. This is not the issue we must decide on appeal. The test is not whether another program would have benefited V.M. or whether he, or this court, might believe that a different disposition would have been preferable. We are tasked with deciding whether

11

the disposition the juvenile court actually chose was within that court's discretion. Put differently, we must decide whether substantial evidence supports the court's determination. (*In re Khalid B.*, *supra*, 233 Cal.App.4th at p. 1288.) We conclude it does.

The record contains substantial evidence to support the court's determination that rehabilitation and community safety could not be met by committing V.M. "to an alternative, less restrictive disposition that [wa]s available to the court." (§ 875, subd. (a)(3)(D).) As discussed, V.M. killed the victim and failed to take accountability for his role in initiating the offense, which suggests V.M. might repeat this behavior if confronted with similar circumstances. This is substantial evidence that the goals of rehabilitation and community safety could not be met with a less restrictive disposition based on the danger V.M. poses to public safety. (See *In re Abdul Y.*, *supra*, 130 Cal.App.3d at pp. 869-870.) V.M. asserts the record does not demonstrate he was at risk for committing similar behavior because "there simply was no evidence that [he] would commit another violent offense." V.M. asserts this is his first sustained petition, he was successful during detention pending disposition of this offense, he expressed remorse, and the district attorney had allowed him to admit to assault. All of this evidence was before the juvenile court, and V.M.'s contentions ask us to reweigh the evidence. We will not. (*In re Caden C.*, *supra*, 11 Cal.5th at p. 640.)

The record contains substantial evidence to support the juvenile court's determination considered V.M.'s "age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing [him] to a term of confinement in a secure youth treatment facility." (§ 875, subd. (a)(3)(E).) The probation report detailed V.M.'s age and his mental health diagnoses and related medication. Page 11 of Dr. Ramezani's report also contained a detailed description of the same. V.M. correctly notes the court indicated it had not read the entire report, just page 11. V.M. details the

report's contents and argues, without elaborating, "[h]ad the court reviewed the entire report, the court would have had a full picture of [his] developmental maturity, mental and emotional health, and the disabilities or special needs that led to this offense," all of which "was highly relevant to whether a less restrictive alternative was suitable." While the report contained more details, it does not follow that the juvenile court did not consider this factor in light of the information contained in the probation report. Further, this is only one of five factors under section 875, subdivision (a)(3).

Accordingly, indulging all reasonable inferences to support its decision (*In re Khalid B.*, *supra*, 233 Cal.App.4th at p. 1288), we conclude there was substantial evidence to support the juvenile court's determination that a less restrictive alternative disposition was unsuitable.

Further challenging the court's determination, V.M. argues the juvenile court's order committing him to the SYTF "was solely for the purposes of retribution, rather than stemming from a full and reasoned consideration of both 'protection and safety of the public' as well as [V.M.'s] 'best interests.'" He claims the court did not conduct an analysis of his needs and the SYTF's services but instead "seemed to be swayed by the 'frustration' and 'palpable grief' of the victim's family." He further asserts "[t]he court essentially said its hands were tied as to the outcome of the transfer hearing" and the petition amendment to include the assault charge but could follow probation's recommendation for a SYTF commitment, "which would be the most restrictive punishment." To that end, V.M. asserts "the court's disposition decision was solely for the purposes of retribution."

We disagree with V.M.'s characterization of the record. The victim impact statements collectively focused on the fact that V.M. murdered the victim but only admitted to an assault charge, and the statements requested the maximum punishment available. It was in response to this that the court made statements that it was bound by the assault admission and jurisdictional hearing outcome. We do not read these

13

statements to mean that the court committed V.M. to SYTF "solely for the purposes of retribution." Further, we reject the contention that the court failed to consider the SYTF's services and V.M.'s needs. As we have already concluded, the court considered the programs available to V.M. and substantial evidence supports the determination that they would be of probable benefit to V.M.

V.M. further maintains that no evidence supports "the court's implied determination that it '*sub silentio* considered and rejected' the less restrictive disposition alternative of MSYGC." The record does not support this contention. "[T]here is no rule that [an SYTF] placement cannot be ordered unless less restrictive placements have been attempted, and there is no requirement that the juvenile court expressly state on the record the reasons for rejecting less restrictive placements." (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1159.) "Rather, 'if there is evidence in the record to show a consideration of less restrictive placements was before the court, the fact the judge does not state on the record his consideration of those alternatives and reasons for rejecting them will not result in a reversal.' " (*Ibid.*) However, " 'there must be some evidence to support the judge's implied determination that he sub silentio considered and rejected reasonable alternative dispositions.' " (*Ibid.*)

Here, the juvenile court stated that it had read and considered the probation report. The probation report detailed that V.M. had been accepted into MSYGC. The report further stated that while an SYTF would be able to provide services to meet V.M.'s needs, MSYGC could be a less restrictive option in the future if V.M. displays good behavior in the SYTF. This evidence supports the court's implied determination that it considered and rejected placement at MSYGC. (*In re Nicole H.*, *supra*, 244 Cal.App.4th at p. 1159.)

14

Accordingly, " ' "indulging all reasonable inferences to support [the juvenile court's] decision" ' " (*In re Khalid B.*, *supra*, 233 Cal.App.4th at p. 1288), we conclude substantial evidence supports the court's order committing V.M. to the SYTF.

DISPOSITION

The order is affirmed.


/s/
BOULWARE EURIE, J.

We concur:


/s/
HULL, Acting P. J.


/s/
ROBIE, J.